dered by them, to continue ready to prosecute the voyage, so soon as the blockade should be removed, which, the letter says, was daily expected. The expenses, then, which were incurred, and the services which were rendered, perhaps, from the 3d of March, certainly from the 19th of June, were incurred and rendered by the direction of the defendants. Had the defendants, on understanding that the license would not protect the Woodrop Simms, from the effect of the blockade, allowed her owner to land his cargo, he might have employed his vessel, perhaps, in the bay navigation; certainly he would have been liberated from all the extra expenses of retaining his vessel in a state of preparation for sea.

While things were in this uncertain state, a proposition was made by Wilson, to vacate the contract, and abandon the voyage, on certain terms, which are stated generally, but as the proposition itself, is not before the court, they cannot be particularly stated. This proposition was not accepted, but afterwards, on the 11th day of January, 1814, a proposition to abandon the voyage, was made on the part of the defendants, who demanded the delivery of the flour, offering to abide by the decision of a court. On this letter, the flour was delivered, and upon this part of the transaction, the claim of the plaintiff, in my opinion, rests. He was in possession of the cargo, and had a right to hold that possession until he could perform his voyage. Whether he performed this voyage, with or without the license, he could have retained the flour at Cadiz, until the freight was paid. If the blockade should be of equal continuance with the war, he might at the expiration of the war, have made the voyage without the license; and I am not prepared to say, that in that case he might not have recovered the stipulated freight, even on the charter-party. In the mean time, the cargo might be, and, probably, would have been, totally lost to the defendants. These advantages were given up with the flour. It could not have been expected by either party, that they should have been given up for nothing. The fair construction then of the contract, under which the flour was restored to the defendants, is, I think, that some equitable compensation should be made, with a view to all the circumstances of the case. This is rather a fit subject for the consideration of the parties themselves, or of friendly arbiters, than of a court. It is a case of hardship, and of loss on both. Each ought to concede something. If the court must decide it, I am not certain what will be my ultimate decision, but I shall now direct an account to be taken, of the expenses incurred by Wilson, from the date of the charter party, to the time of restoring the flour, stating separately those which were incurred, in taking the cargo on board, and prior to March 3d, 1813, those which were incurred between the 3d of March, and 19th of June, and those which were incurred after the 19th of June. In addition to this report, I could wish to be informed how cases of this character have been generally settled by the parties.

June 7th, 1820, the order of the court was as follows: "This cause came on, &c. On consideration whereof, the court doth direct an account to be taken by one of its commissioners, of the expenses incurred by the plaintiff, from the date of the charter party, in the proceedings mentioned, to the time of restoring the flour, the cargo of the Woodrop Simms, by the plaintiff, to the defendants Moses Myers & Son, stating separately those which were incurred in taking the cargo on board, and to the 3d March, 1813, those which were incurred between the 3d March, and the 19th June, 1813, and those incurred after the said 19th June, which account he is directed to report to the court, &c." In obedience to this order, Commissioner John Cowper, made a report of the expenses incurred by the plaintiff, during the three periods specified in the order. The expenses incurred from the date of the charter-party, to the 3d March, amounted to $1943 24 cents. This however included "the cost of a Sidmouth license, $1000:" those incurred for the second period, amounted to $633 50 cents: and those after the 19th June, to $359 52 cents, making the aggregate sum of $2936 26 cents, principal. He also calculated the interest on those respective sums, from the 3d March, the 19th June, and 31st July, 1813, to 3d December, 1820, the time of the report, making an aggregate of principal and interest of $4281 98 cents. The court rejected the charge for the Sidmouth license, and the interest on it amounting to $1465, and rendered a decree for the balance.

9th June, 1821, MARSHALL, Circuit Justice, without expressing any further opinion, directed the following decree to be entered: "This cause came on to be finally heard on the papers formerly read, and on the report of the commissioner, and was argued by counsel. On consideration whereof, the court, disapproving of so much of the report, as allows one thousand dollars for the Sidmouth license, with interest thereon, and approving the residue thereof, doth adjudge, order, and decree that the defendants do pay to the plaintiff, the sum of two thousand, eight hundred and sixteen dollars, ninety five cents, and his costs by him about his suit in this behalf expended."

---

## Case No. 17,818.

### WILSON v. LIFE ASS'N OF AMERICA.

[3 Cent. Law J. 715, 765; [1] 6 Ins. Law J. 240.]

Circuit Court, E. D. Missouri.   Oct. Term, 1876.

LIFE INSURANCE — ACTION ON POLICY — ADMISSIBILITY OF DECLARATIONS OF ASSURED.

The case of Wilson v. Life Ass'n of America, was lately decided in the United States circuit court in Missouri [by Treat, District Judge], up-

[1] [Reprinted from 3 Cent. Law J. 715, 765, by permission.]

on the proposition that the declarations of the insured husband, made after the date of the policy, as to his health existing, or matters of private history occurring, prior to the date of the policy, are not admissible as evidence in a suit by the wife upon her policy.

[Compare Evers v. Life Ass'n of America, 59 Mo. 429.]

WILSON (LINDENBERGER v.). See Case No. 8,361.

WILSON (LOVEJOY v.). See Case No. 8,-551.

WILSON v. LUDLOW. See Case No. 8,052.

## Case No. 17,819.

### WILSON v. McCLEAN et al.

[1 Cranch, C. C. 465.] [1]

Circuit Court, District of Columbia. Nov. Term, 1807.

EVIDENCE — STATEMENT OF GROUNDS FOR BELIEF.

When a witness states the grounds of his belief of a material fact, his belief, together with the reasons of his belief, are proper evidence to be left to the jury.

In a deposition the deponent said he *"believed the goods were for the house of McClean & Winterberry, as they were shipped to Mc-Clean & Winterberry at Alexandria."*

Mr. Youngs. for defendant, moved the court to strike out the words above (in italics), which the court refused, because the witness has stated the grounds of his belief.

DUCKETT, Circuit Judge, absent.

WILSON (McIVER v.). See Case No. 8,833.

## Case No. 17,820.

### WILSON v. MANDEVILLE et al.

[1 Cranch, C. C. 433.] [1]

Circuit Court, District of Columbia. July Term, 1807.

LIMITATION OF ACTIONS — MERCHANT'S ACCOUNTS.

The statute of limitations, does not apply to accounts between merchants.

Assumpsit for goods sold and delivered. Pleas general issue, and limitation of five years. Va. Law, Dec. 19, 1792, p. 107, § 4.

E. J. Lee, for plaintiff, moved for leave to withdraw the general replication and put in a special replication, that the money in the several promises, &c., became due "on trade and merchandise had between the plaintiff and defendants as merchants, and wholly con cerned the trade of merchandise." This replication was taken verbatim from that in Webber v. Tivill, 2 Saund. 122.

Mr. Lee cited Scudemore v. White, 1 Vern.

456; Chievly v. Bond, 4 Mod. 105; Catling v. Skoulding, 6 Term R. 189.

Mr. Youngs, for defendant, contended that the exception in the statute applies only to actions of account.

THE COURT permitted the general replication to be withdrawn and the special replication to be filed, being of opinion that the exception did not apply to actions of account only, but to assumpsit upon open accounts. See the cases cited in notes to the case of Webber v. Tivill, 2 Saund. 124.

[See Case No. 17,821.]

## Case No. 17,821.

### WILSON v. MANDEVILLE et al.

[1 Cranch, C. C. 452.] [1]

Circuit Court, District of Columbia. Dec. 18, 1807.[2]

LIMITATION OF ACTIONS—MERCHANTS' ACCOUNTS—PRACTICE.

1. The statute of limitations does not apply to accounts current of trade and merchandise between merchants, and it is not material that all dealings between the parties had ceased for more than five years before the bringing of the suit.

2. After judgment for the plaintiff upon demurrer to the replication to the plea of limitations, the court will not permit the defendant to withdraw the demurrer, and rejoin specially, unless he can show by affidavit, that it is necessary to the justice of the case.

Assumpsit. The declaration consisted of three counts: (1) Indebitatus assumpsit for goods sold and delivered. (2) Quantum valebant. (3) Indebitatus assumpsit in the sum of $135.47, "for the hire of a certain negro man named Herbert, by the plaintiff, before that time hired to the defendants at their special instance and request, and they the said defendants according to that hiring, had used and labored the said negro man; and being so indebted the said defendants in consideration thereof," &c., "promised to pay," &c. Pleas: (1) Non assumpsit. (2) The act of limitations, non assumpsit infra quinque annos. Replication: "That the money in the several promises and undertakings aforesaid above mentioned' in the declaration, at the time of making the promises and undertakings aforesaid, became due and payable on an account current of trade and merchandise had between the said plaintiff and the said defendants as merchants, and wholly concerned the trade of merchandise." Rejoinder: "That in the month of January, 1799, the partnership of Mandeville and Jamesson was dissolved, and public notice given of such dissolution, of which the plaintiff had a knowledge at the time; and that at the time of the said dissolution of the partnership aforesaid, all accounts between the said plaintiff and

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 5 Cranch (9 U. S.) 15.]